## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: STIMWAVE TECHNOLOGIES INC., *et al.*, | : | Chapter 11 |
| | : | |
| Debtors. | : | Case No. 22-10541 (TMH) |
| _____ | : | |
| | : | |
| GARY PERRYMAN, *et al.*, | : | |
| | : | |
| Appellants, | : | |
| v. | : | Civ. No. 24-199 (JLH) |
| | : | |
| PROVINCE, LLC, AS LIQUIDATING TRUSTEE FOR THE SWTI LIQUIDATING TRUST,[1] | : | |
| | : | |
| | : | |
| Appellee. | : | |

Gary Perryman, Linda Perryman, and Brandyn Perryman, Miami Beach, FL

   *Pro Se Appellants*

Mette H. Kurth, Culhane PLLC, Wilmington, DE

   *Counsel for Appellee, Province, LLC, as Liquidating Trustee for the SWTI Liquidating Trust*


## <u>MEMORANDUM OPINION</u>


October 30, 2024

---

   [1] Appellants incorrectly identified Stimwave Technologies, Inc. as the Appellee in this matter.

_____
**HALL, UNITED STATES DISTRICT JUDGE**

## I.    INTRODUCTION

This appeal arises in the Chapter 11 cases of Stimwave Technologies, Inc. and Stimwave LLC (together, the "Debtors").  Appellants Gary Perryman, Linda Perryman, and Brandyn Perryman (together, the "Appellants") appeal the Bankruptcy Court's Order, dated February 6, 2024 (B.D.I. 1124)[2] (the "Sanctions Order"), which imposed narrow, non-monetary sanctions based on Appellants' "duplicative and serial filings," which "frequently ignore[d] applicable procedural rules and assert baseless claims for relief," and which "caused significant disruption and needlessly increased the cost of the administration of these cases," as set forth in detail in the Bankruptcy Court's accompanying Memorandum Opinion, *In re Stimwave Technologies, Inc*., 2024 WL 717770, at *9 (Bankr. D. Del. Feb. 21, 2024).  The Sanctions Order requires Appellants to seek leave from the Bankruptcy Court, in accordance with a pre-filing screening procedure, before making any additional *pro se* filings in the Chapter 11 cases.  For the reasons set forth below, the Court will affirm the Sanctions Order.

## II.    BACKGROUND

### A.    The Parties

The Debtors were a medical device manufacturer and provider of permanently implanted neurostimulation products that offered a treatment alternative to opioids for chronic pain patients. Laura Perryman was the Debtors' Chief Executive Officer from its founding in or around 2010 until November 2019.  Laura Perryman faced criminal charges from the Department of Justice and civil charges from the Securities and Exchange Commission for alleged actions taken while serving as the

_____
[2] The docket of the Chapter 11 cases, captioned *In re Stimwave Technologies, Inc*., No. 22-10541 (TMH) (Bankr. D. Del.), is cited herein as "B.D.I. __."  The appendix (D.I. 9) filed in support of the Liquidating Trustee's answering brief (D.I. 6) is cited herein as "Appx. __."

CEO of the Debtors. *See generally United States v. Perryman*, Case No. 1:23-cr-00117-DLC (S.D.N.Y. 2023);[3] *SEC v. Perryman*, Case No. 1:23-cv-10985-LGS (S.D.N.Y. 2023). Her husband, Gary Perryman, was a member of the Board of Directors of the corporate parent of Debtor Stimwave LLC. Brandyn Perryman is the son of Laura and Gary Perryman.

On June 15, 2022 ("Petition Date"), the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code. During the bankruptcy case, the Debtors' business was sold as a going concern to SWT SPV LLC, d/b/a Curonix LLC ("Curonix"). (Appx. 633A.) On March 21, 2023, the Bankruptcy Court entered an order approving the Debtors' plan of liquidation, pursuant to which, the Debtors' remaining assets were transferred to a liquidating trust. (Appx. 1837.) Pursuant to the confirmed Plan, the Debtors transferred substantially all of their remaining assets to the SWTI Liquidating Trust (the "Liquidating Trust"), and Appellee Province, LLC, was appointed as Liquidating Trustee for the Trust (the "Liquidating Trustee").

## B. The Sanctions Motion

The Liquidating Trustee filed the Sanctions Motion on January 13, 2024. (Appx. 3672.) The Sanctions Motion asserts that Appellants repeatedly have filed "baseless and procedurally defective filings" that require the Liquidating Trustee and Debtors to expend "substantial resources" to the detriment of the estates and their creditors. (*Id.* ¶ 11.) Appellants were provided notice of the Sanctions Motion, and a deadline of January 22, 2024, was imposed as the deadline for filing any

---

[3] On March 6, 2024, Laura Perryman was convicted by the United States District Court for the Southern District of New York of one felony count of conspiracy to commit wire fraud and health care fraud and one felony count of health care fraud in connection with a scheme to create and sell a non-functioning dummy medical device for implantation into patients suffering from chronic pain, resulting in millions of dollars in losses to federal healthcare programs. *United States v. Perryman*, Case No. 1:23-cr- 00117-DLC (S.D.N.Y.) (Docket Attached at Appx. 7384); Transcript (Appx 7404); Verdict (Appx 7435); Supplemental Verdict (Appx. 7437). On June 17, 2024, the court sentenced her to a term of 72 months of imprisonment, which she is currently serving. *United States v. Perryman*, Case No. 1:23-cr- 00117-DLC, D.I. 137 (S.D.N.Y. June 17, 2024).

responses. (Appx. 3721.) In connection with the Sanctions Motion, the Liquidating Trustee filed its Request for Judicial Notice (Appx. 4052) (the "Judicial Notice") of over ninety-eight (98) pleadings in the Chapter 11 proceedings necessitated by Appellants' conduct, as well as the civil docket sheets for seven other proceedings pending before this Court, the United States Bankruptcy Court for the Southern District of Florida (Miami), and the United States District Court for the Southern District of New York. Appellants filed several (timely and untimely) objections to the Sanctions Motion, all of which were considered by the Bankruptcy Court. (Appx. 3730, 3740, 4205, 4285.) On January 29, 2024, the Bankruptcy Court held a hearing regarding the Sanctions Motion. Appellants filed no witness or exhibit lists in anticipation of the hearing. (Appx. 63-66.) Nor did any witnesses attend the hearing. Each of the Appellants—Laura, Gary, and Brandyn Perryman—were present at the hearing on the Sanctions Motion at which time the Bankruptcy Court heard arguments from all parties. (*See* Appx. 4854-88.)

## C.    The Sanctions Order and Memorandum Opinion

On February 6, 2024, the Bankruptcy Court issued the Sanctions Order, which set certain pre-filing screening procedures for Appellants to obtain leave to make future *pro se* filings. To obtain leave to make a filing, Appellants are to submit, by email, a short summary of the proposed filing which explains "the legal purpose or basis of the pleading," describes "the nature of the pleading with specificity," indicates "whether the relief has been previously sought in this or another court, and if so, when and where there has been a ruling," and to the extent the filing seeks to assert a claim, "sets forth the basis on which the Perrymans assert that a late filing should be permitted." (B.D.I. 1124 at 2-3, ¶ 2(a)(i)-(iv).) As the submission is made by email directly to chambers, the request need not be mailed and will not be docketed. The Sanctions Order further provides that the Judge will review the submission in chambers and enter an order denying or granting the request or scheduling it for hearing, as appropriate. (*Id.* ¶ 2(b).) The grounds for denying leave include filings that are deemed

4

"repetitive, duplicative, vexatious, incoherent, and/or pertaining to issues already decided by the Court." (*Id*. ¶ 2(c).)  Notably, the procedures are applicable only to further *pro se* filings by Appellants and their affiliates; they do not apply to any "filings made on their behalf by an attorney admitted to the Court." (*Id*. ¶ 2.)

Addressing each of the Appellants, the Bankruptcy Court's accompanying Memorandum Opinion includes a lengthy summary of the various filings and actions that warranted entry of the Sanctions Order. *See In re Stimwave*, 2024 WL 717770, at *3-8.  As noted by the Bankruptcy Court, "the docket activity in the Chapter 11 Cases for the past year has primarily been driven by the Perrymans' numerous filings and the responses thereto by various parties." *Id*. at *1.  The Bankruptcy Court further noted that, in recent months, Appellants had been the subject of two other sanctions motions and an order to show cause why Appellants should not be sanctioned for refusing to participate in an agreed mediation. *See id*.

### D.    The Appeal

On February 14, 2024, Appellants filed their Notice of Appeal with respect to the Order. (D.I. 1.) The appeal is fully briefed. (D.I. 5, 6, 12.)  The matter was assigned to me on February 21, 2024.

## III.    JURISDICTION AND STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 158(a), district courts have jurisdiction to hear appeals "from final judgments, orders, and decrees" in bankruptcy proceedings.  28 U.S.C. § 158(a).

"Federal courts may exercise their inherent power 'to impose sanctions on both litigants and attorneys to regulate their docket, to promote judicial efficiency, and to deter abuse of judicial process.'" *Citrix Systems, Inc. v. Workspot, Inc*., 2020 U.S. Dist. LEXIS 180673, *18-19 (D. Del. Sept. 25, 2020)  (citations omitted).  The Third Circuit has further recognized that district courts are expressly empowered to address the vexatious actions of *pro se* litigants, even if such vexatious conduct does not fall squarely under a specific statute or federal rule, through the exercise of their

inherent powers. *See Inst. for Motivational Living, Inc. v. Doulos*, 110 Fed. App'x 283, 286-87 (3d Cir. 2004).

Appellate courts review the exercise of these powers for abuse of discretion. *See Lai v. District V-C Ethics Committee*, 134 Fed. App'x 468, at *1 (3d Cir. 2009). An abuse of discretion can occur "if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous." *Zolfo, Cooper & Co. v. Sunbeam-Oster Co.*, 50 F.3d 253, 257 (3d Cir. 1995). "A finding of fact is 'clearly erroneous' when, although there is evidence to support it, the reviewing body on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Grier*, 475 F.3d 556, 559 (3d Cir. 2007) (cleaned up). The appellate court "will not disturb the court's decision unless it is 'contrary to reason or without a reasonable basis in law or fact' or the court failed to provide the sanctioned party with notice and an opportunity to respond." *Hightower v. Ingerman Mgmt. Co.*, 2024 WL 2794408, *2 (3d Cir. 2024) (quoting *Simmerman v. Corino*, 27 F.3d 58, 62 (3d Cir. 1994)).

## IV.    ANALYSIS

The issue on appeal is whether the Bankruptcy Court abused its discretion in imposing sanctions in the form of a pre-filing injunction. In sum, Appellants present no basis to conclude that the Bankruptcy Court abused its discretion.

### A.    The Bankruptcy Court Applied the Correct Legal Standard

The Bankruptcy Court correctly noted that § 105(a) of the Bankruptcy Code authorizes bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," and that bankruptcy courts may utilize the authority of § 105(a) to impose civil sanctions on parties for violations of court orders. *In re Stimwave*, 2024 WL 717770, at *3 (citing *In re Vaso Pharms., Inc.,* 514 B.R. 416, 421 (Bankr. D. Del. 2014)). The Bankruptcy Court

also correctly noted that the All Writs Act, 28 U.S.C. § 1651, authorizes all courts established by Act of Congress to issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law and that this Circuit authorizes District Courts to utilize their authority under the All Writs Act to restrict the meritless filings of a litigant. *Id*. (*citing In re Packer Ave. Assocs.*, 884 F.2d 745, 747 (3d Cir. 1989) ("This circuit has concluded that district courts may issue an injunction requiring a litigant who has repeatedly filed complaints alleging claims that have already been fully litigated to receive court approval before filing further complaints."). The Memorandum Opinion further recognized that while courts may restrict the filings of a party engaged in a "continuous pattern of groundless and vexatious litigation," these injunctions should be used sparingly, particular with respect to *pro se* litigants. *Id*. (quoting *In re Oliver*, 682 F.2d 443 (3d Cir. 1982)). As the Bankruptcy Court correctly explained:

> Courts may only impose a filing injunction on a pro se litigant in (1) exigent circumstances, "such as when a litigant continuously abuses the judicial process by filing meritless and repetitive actions[,]" (2) with notice to the litigant to show cause, and (3) with a narrowly tailored injunction fit to the particular circumstances of the case.

*Id*. (citing *Yoder v. Wells Fargo Bank, N.A.,* 765 Fed. App'x 822, 824 (3d Cir. 2019)). Here, Appellants do not dispute that the Bankruptcy Court applied the correct legal standards in imposing non-monetary sanctions under § 105(a) of the Bankruptcy Code, the All Writs Act, and its inherent authority. The bulk of Appellants' opening brief is devoted to a discussion of monetary sanctions—which were neither requested nor imposed by the Sanctions Order.

### B.    The Record Provides Ample Support for the Non-Monetary Sanctions Imposed

With respect to each of the Appellants, the Memorandum Opinion sets forth repeated instances of meritless and vexatious filings in these Chapter 11 cases that have required the Debtors, the Liquidating Trustee, and other parties to expend substantial resources, depleting estate assets and continually delaying the administration of the bankruptcy cases. Appellants point to no clear error

by the Bankruptcy Court in assessing this evidence. Rather, Appellants seek to minimize their actions, stating that they have filed only six separate "moving/actions." (D.I. 5 at 4.) This is contradicted by the record, which reflects 96 separate filings Appellants have made in the Chapter 11 cases and associated adversary proceedings, as well as the 62 responsive filings those filings required. Appellants and their affiliates have not only filed 11 proofs of claim, initiated three adversary proceedings (duplicative of various proofs of claim) (Appx. 5741-7152), commenced four proceedings before this Court seeking to withdraw the reference (Appx. 7184, 7258, 7261, 7264), and brought two appeals to this Court (including the present appeal), but they have filed extensive motions, objections, claims for alleged administrative expenses, and discovery requests in the Chapter 11 cases. (*See* D.I. 8 at 1-31 (listing filings); *id*. at 31 (listing proofs of claims); *id*. at 32-39 (other items for judicial notice).)

### 1.    Baseless or Unsubstantiated Pleadings

For example, since November 2019, Richards, Layton & Finger, P.A., has represented the Debtors in a Delaware Court of Chancery action (the "Chancery Court Action") against Ms. Perryman and affiliated entities with respect to claims arising from alleged breach of fiduciary duty, aiding and abetting breach of fiduciary duty, conversion, tortious interference with contractual relations, and breach of contract. On July 13, 2022, the Bankruptcy Court entered an uncontested order approving the Debtors' motion to employ Richards Layton as an ordinary course professional. (Appx. 143.) Appellants did not oppose the employment motion or appeal that order. When Richards Layton filed its declaration of disinterestedness in October 2022, however, Ms. Perryman filed both an objection (Appx. 785) and a sur-reply (Appx. 986) challenging the firm's retention. Her objection, however, challenged the merits of the Chancery Court Action, not Richards Layton's disinterestedness, an asked the Bankruptcy Court to order the Debtors to dismiss the Chancery Court Action. In overruling

Ms. Perryman's objections, the Bankruptcy Court found that they were not relevant to Richards Layton's retention and unsupported by any factual or legal basis. (Appx. 1006-07 at 9:2-10:4.)

Gary Perryman attacked Riveron Management Services, LLC and the Debtor's Chief Restructuring Officer with motions that appeared designed principally to harass the Debtors' professionals and management team. The Riveron challenge (Appx. 972) included inflammatory allegations for which no evidence was ever presented, including that the Debtors' management team "pillaged funds" (Appx. 974) from the Debtors; that they "drained intentionally" the estate (Appx. 973); that the executive committee of the Debtors' board of directors "received kickbacks financially" (Appx. 972); that the Debtors' CEO was "incompetent" (Appx. 974); that the sale to Curonix was a "farse" [sic] (Appx. 975); and that the Debtors' management team is "defrauding the public" (*id*.). Gary Perryman later emailed Debtors' counsel to withdraw his objection. (Appx. 984.)

Ultimately, Appellants produced no evidence supporting these allegations, and the multiple requests were all denied. (Appx. 569 at 18-19.)

### 2.      Duplicative Attempts to Strike

Laura Perryman repeatedly sought to strike negative references to her actions or character from the record in these cases through specific motions to strike (Appx. 931), a motion for injunction (Appx 1325), a challenge to the Debtors' Disclosure Statement (Appx. 1034), and in objections to routine motions, which pleadings made sweeping allegations against a wide range of parties (*e.g.,* the Debtors' disclosure statement was "a smoke screen" for directors and officers "engaged in . . . fraud, bribery, extortion, corruption, collusion, conversion, tortious interference, false claims, breach of contract, breach of fiduciary duty, willful misconduct, gross negligence, fraudulent misrepresentation, embezzlement, and malicious prosecution" (Appx. 1035); Debtors' counsel had orchestrated "the illegal takeover" of the Debtors (Appx. 1037); the Debtors' management team had fabricated the DOJ investigation as part of a "scorched earth hate campaign" (Appx. 1036, 464 n.4); and was "maliciously

conspiring to defame her" (Appx. 1019).  At the hearing to consider approval of the Debtors'

disclosure statement, Gary Perryman threatened that, if the Court did not order the Debtors to remove

statements that the Perrymans did not like or agree with: "It's got to be another three years before this

over and will be settled . . . it's going to go into a higher Court until we have it heard by the highest

Court that needs to be heard. We don't care how long it takes." (Appx. 1331 at 12:10-19.)  Again,

Appellants produced no evidence supporting these allegations and the multiple requests were all

denied (*see* Appx. 1015-16, 1350-51) or abandoned.

### 3.    Repeated, Overly Broad, and Duplicative Discovery Demands

Gary Perryman has made repeated, overly broad, and duplicative discovery demands.  (*See*

Appx. 180, 197, 3167.)  In support of his demands, he asserted that "the basis for the bankruptcy itself

is predicated upon fraud" and that the bankruptcy case is "simply a smokescreen to change the

ownership holdings of the Debtor without paying a fair market value" (Appx. 199); and that that

competing bidders were "planted" by Curonix to drive up the purchase price (Appx. 3170).

Ultimately, all of the discovery demands except one—which Mr. Perryman failed to pursue or set for

hearing—were denied.  (Appx 634, 722, 734-36.)

Mr. Perryman caused members of the Debtors' management team and the Bankruptcy Court

to devote significant resources responding to claim objections only to abandon them the day of the

hearing.  In March 2023, Mr. Perryman filed an objection (Appx. 1677) to the claims of Jeffrey

Goldberg, Marc Love, and Regina Groves, asserting, among other things, that they had "wasted

millions of dollars of the Debtor's funds . . . in their failed crusade to fabricate . . . fake claims against

the Perrymans" (*id.* ¶ 1) and "orchestrate[d] the demise of the Debtor's Operations" (*id.* ¶ 3).  Mr.

Perryman filed numerous motions, including emergency motions, and sought and obtained extensive

discovery with respect to his objections.  (*See, e.g.,* Appx. 1740, 1751, 1759, 1835, 2488, 2527, 2529,

2531, 2539, 2541, 2706, 2708, 2710, 2712, 2721, 2740, 2744, 2747, 2750, 2751.)   After the

Bankruptcy Court denied his motion to vacate the hearing (Appx. 2725), on May 3, 2023, the creditors and their counsel and witnesses, as well as counsel for the Debtor and the Official Committee of Unsecured Creditors (the "Committee"), appeared at the hearing as scheduled.  The Bankruptcy Court observed that there had been a lot of activity on the docket, procedurally there was a lot of confusion around the hearing, and only that morning the Court and the parties had received a notice of withdrawal of Mr. Perryman's claim objection.  Noting that it found "Mr. Perryman's behavior in the matter offensive to the Court and extremely disrespectful to the parties involved," the Bankruptcy Court determined that the matter could not go forward in light of the withdrawal.  (Appx. 2766-67.)

### 4.    Unsubstantiated, Duplicative, and Procedurally Defective Claims

Appellants have also asserted, and continue to assert, extensive claims against the Debtors' estates.  These claims largely: (a) restate allegations and issues that have already been resolved (unfavorably to the Perrymans) with respect to prior filings; (b) are unsupported by documentation or evidence, even after objections have been made pointing out the lack of support; (c) are duplicative of one another, with claims set forth in proofs of claim being improperly reasserted in the form of adversary proceedings; or (d) were filed past the applicable bar date.  As summarized in part below, these proofs of claim ("POCs") include: (i) POC No. 17 ("Perryman Family Trust Claim") (Appx. 5436); (ii) POC No. 59 by StimGuard, as assigned to Brandyn Perryman ("Assigned StimGuard Claim") (Appx. 5597); (iii) POC Nos. 54 & 55 ("Laura Perryman Unpaid Wages Claims") (Appx. 5443, 5520); (iv) an administrative claim filed by Gary Perryman (Appx. 2781) together with POC Nos. 66 & 105 (Appx. 5628, 5689) (together, "Gary Perryman Administrative/Indemnity Claims"); (v) POC Nos. 104, 106 & 107 ("Laura Perryman Administrative Claims") (Appx. 5673, 5720, 5730); and (vi) the Laura Perryman Advancement and Indemnification Claim (*see* Appx. 3689).

(i)    ***Perryman Family Trust Claim*** is a general unsecured claim of "$4,000,000 or unknown," based on common shares of stock, which claim including no supporting documentation.  The claim required the Debtor to object on the grounds that ownership

of common stock does not qualify as a claim within the meaning of the Bankruptcy Code. (Appx. 228, 557.) Appellants responded by asserting that the objection had been filed "solely out of revenge for the Director bringing up the Medicare billing fraud scheme" and to "strip the value of the shares from" Mr. Perryman. (Appx. 742.) Subsequently, this claim was withdrawn. (Appx. 767.)

(ii)    ***Assigned StimGuard Claim*** asserted a general unsecured claim against the Debtors in the amount of $585,826.00 in connection with sales of StimGuard products to customers facilitated through the Debtor, loan funds provided to the Debtor, and amounts paid to a third-party vendor for equipment assigned to the Debtor instead of StimGuard. The claim was not supported by documentation demonstrating liability or the specific amount claimed.

(iii)   ***Laura Perryman Unpaid Wages Claim***, adversary proceeding (Adv. Proc. No. 23-50322-TMH), and motion to withdraw the reference (Civ. No. 23-673-JLH), are duplicative proceedings asserting two substantially identical general unsecured claims against the Debtors totaling approximately $1.2 million for alleged unpaid wages, including a $100,000 bonus and $400,000 in severance. POC No. 54, asserted against Stimwave Technologies Incorporated, is unliquidated and bases the claim on unclear grounds including potential indemnification. POC No. 55, asserted against Stimwave LLC, includes the same evidence as POC No. 54, but instead asserts $1,218,819.00 as the total amount for the claim, as well as providing unpaid wages as the basis of the claim. Linda Perryman subsequently purported to transfer POC No. 55 to Brandyn Perryman. (Appx. 2486.) On February 24, 2023, the Debtors filed an objection to POC No. 55. (Appx. 1580.) On March 27, 2022, Brandyn Perryman responded by initiating an adversary proceeding against the Debtor and others stemming from his rights as purported assignee of POC No. 55. (Adv. Pro. No. 23-50322 (TMH), D.I. 1.) Brandyn Perryman subsequently purported to assign POC No. 55 back to Laura Perryman and himself. (Appx. 2777.) Thereafter, Brandyn Perryman attempted to join Ms. Perryman as a plaintiff in the adversary proceeding through an amended complaint. On the same day he filed the amended complaint, Brandyn Perryman filed a motion for withdrawal to the District Court for the Southern District of Florida. Contemporaneous with the filing of the amended complaint, the Perrymans also filed a motion to withdraw the reference with respect to the adversary proceeding to this Court. (Civ. No. 23-673-JLH.) These procedurally improper tactics have multiplied the proceedings in an unreasonable manner, resulting in unnecessary costs.

(iv)    ***Gary Perryman Administrative/Indemnification Claims***, including an administrative claim, two proofs of claim, an adversary proceeding (Adv. Proc. No. 23-50750-TMH), and motion to withdraw the reference of same (Civ. No. 24-112-JLH) are duplicative proceedings seeking indemnification and payment of legal fees under the same indemnification agreement. The Debtor objected to the claim as untimely, unsubstantiated, and not legally proper. On October 25, 2023, Gary Perryman commenced an adversary proceeding setting forth substantially the same claims. (Appx. 3066.) On November 16, 2023, Mr. Perryman filed a motion to withdraw the reference of same to this Court. (Civ. No. 23-1322-JLH.) Again, these tactics have multiplied the proceedings in an unreasonable manner.

12

(v)     ***Laura Perryman Administrative Claims*** are three substantially identical proofs of claim each in the amount of approximately $17.4 million for post-petition defamation, slander, and libel. POC No. 107 includes a Request for Payment of Administrative Claim that does not appear to have been noticed for hearing or filed on the docket. This claim appears to be a further effort to relitigate the Bankruptcy Court's prior decisions regarding her motion to strike.

(vi)    ***Laura Perryman Advancement and Indemnification Claim*** was submitted over four months after the administrative claims bar date. By letter dated November 13, 2023 to the Liquidating Trustee (Appx. 3689), Laura Perryman apparently demanded indemnification and advancement of legal costs in connection with separate litigation commenced against Ms. Perryman by Kennedy Lewis Investment Management LLC in connection with her role as CEO of the Debtor, and indicated that she intends to file an administrative claim, a duplicative adversary proceeding, and a motion to expedite this matter.

### 5.      Other Requests for Sanctions

Following the sale to Curonix, on November 21, 2023, Curonix filed a motion to enforce the sale order based on Appellants' alleged interference with the Stimwave trademark and domain name (B.D.I. 1031) ("Curonix Motion"). On December 20, 2023, the Bankruptcy Court entered an order granting the Curonix Motion and enforcing its prior sale order (B.D.I. 1048) ("Enforcement Order"). Gary Perryman appealed the Enforcement Order, which appeal was later dismissed for non-compliance. (B.D.I. 1053; Civ. No. 23-1474-JLH, D.I. 6.) On January 6, 2024, Curonix filed a motion for sanctions and contempt against Appellants based on the violations of the Sale Order and Enforcement Order, which required Appellants to redirect the Debtors' website, under the control of Gary Perryman, to the proper URL. (Appx. 3515.) Gary Perryman objected. (Appx. 3567.) At some point before the hearing, however, the URL began to redirect to the proper website. (*See* B.D.I. 1074 at 4:18-22, 9:10-12, 12:2-6.)

After extensive discussions regarding mediation before and after June 2023, on November 29, 2023, the Liquidating Trustee and the Perrymans submitted a stipulation (Appx. 3298), which was approved by Order of the Bankruptcy Court (Appx. 3335), staying all matters brought by the

Perrymans so that the parties could participate in mediation. Appellants thereafter requested and obtained an extension of the mediation date until January 15 or 22, 2024. On January 16, 2024, the Mediator filed his Request to Withdraw as Court Appointed Mediator, advising the Bankruptcy Court that Appellants did not agree to any of the mediation dates set by the Mediator, and that on January 10, 2024, Gary Perryman informed the parties that the Perrymans did not wish to participate in the court-ordered mediation. (B.D.I. 1080.) The Bankruptcy Court *sua sponte* issued a show cause order, finding that "[t]he Perrymans' refusal to participate in the mediation is a violation of the Mediation Order for which this Court has the authority to find the Perrymans to be in contempt and impose sanctions." (Appx. 3727.) In the meantime, the Liquidating Trustee's own Sanctions Motion was filed and granted, leading to this appeal.

In sum, the cost of responding to Appellants' filings—summarized above only in part—is significant and outside of the scope of a Chapter 11 proceeding. While it is normal in cases of this size to expect some objections and responses by parties in interest, the cost of responding to unsubstantiated and repeated filings is not. Responding more than once to repeated misarticulated arguments in disparate, procedurally inappropriate pleadings and multiple duplicative proceedings raises such costs exponentially, at the expense of other creditors.

### D. Appellants Had Notice of the Sanctions Motion and Opportunity to Respond

Appellants challenge the Sanctions Order on the ground that "the Court did not hold a hearing on the Sanctions Motion, took no testimony and presented [sic] no evidence that at any time there was a request to withdraw a motion filed by the Appellants." (D.I. 5 at 10.) These assertions are contradicted by the record. In accordance with Rule 9013-1 of the Local Rules for the United States Bankruptcy Court–District of Delaware (effective February 1, 2023) (the "Local Rules"), the Sanctions Motion was accompanied by a notice of the hearing, which advised Appellants of the relief sought in the Sanctions Motion and their right to respond to the Sanctions Motion and to appear and

14

be heard with respect to the relief sought therein. The hearing on the Sanctions Motion is the appropriate time for the parties to present their legal arguments as well as any relevant evidence that they wished for the Bankruptcy Court to take into consideration. The record reflects that Appellants filed numerous replies, all of which were heard and considered by the Bankruptcy Court (whether timely filed or not), that they had an opportunity to present witnesses and evidence, and that they each appeared at the hearing and presented their arguments in opposition.

Appellants' argument that the Bankruptcy Court erred in imposing any sanction because "at no time did Appellees request withdrawal of a Motion filed by the Appellant[s]," is simply misplaced. (*See* D.I. 5 at 10-11.) Unlike Bankruptcy Rule 9011, there is no statutory or procedural requirement, under either § 105(a) of the Bankruptcy Code or the All Writs Act, for the Court or any party to request that pleadings be withdrawn prior to seeking or imposing a prefiling injunction. Nor have Appellants cited any procedural requirement that two hearings be held—a pre-hearing to determine whether the parties' filings have been abusive or vexatious with a second hearing to follow regarding the request for sanctions.

### E.    The Relief Granted Is Narrowly Tailored

The types of injunctive orders that have been found to be problematic in the Third Circuit, and that have been vacated on review, are blanket prohibitions against all further filings by a litigant. *See e.g., Brow v. Farrelly*, 994 F.2d 1027, 1039 (3d Cir. 1992); *In re Packer Ave. Assocs.,* 884 F.2d at 748. The Sanctions Order, by contrast, does not seek to prohibit Appellants from ever again filing a document in these cases. Rather, like other injunctive orders issued in the Third Circuit, it merely seeks to implement pre-filing screening protocols to ensure that any future *pro se* filings in these cases are not untimely, improper, duplicative, or vexatious and do not seek to relitigate issues already decided by the Bankruptcy Court. This is precisely the type of narrowly tailored injunctive order that has been approved in numerous other cases and that appropriately balances "the right of the litigant

to access to the courts, the right of parties to previous litigation to enjoy the repose of *res judicata*, and the right of taxpayers [and in this case, creditors] not to have a frivolous litigant become an unwarranted drain on their resources." *In re Packer Ave. Assocs.,* 884 F.2d at 748. Indeed, as the Liquidating Trustee points out, the filing protocol set forth in the Sanctions Order tracks that adopted in *In re Micron Devices, Inc.,* in response to Ms. Perryman's similar conduct in another bankruptcy case. *In re Micron Devices, Inc.*, 638 B.R. 649 (Bankr. S.D. Fla. 2021), *aff'd sub nom Perryman v. Kiem (In re Micron Devices, Inc.*), 657 B.R. 897, 901 (S.D. Fla. 2024) (Appx. 7356-58), on appeal to the 11th Cir. (Appx. 7372).

Based on the foregoing, the Court finds no abuse in the Bankruptcy Court's exercise of discretion in entering the Sanctions Order imposing a pre-filing screening protocol.

### F.    Appellants' Remaining Arguments Are Unavailing

Appellants' opening brief raises three issues: (1) whether Appellants' motion practice constituted bad faith under 28 U.S.C. § 1927 (*see* D.I. 2 at 14-16); (2) whether sanctions under 28 U.S.C. § 1927 may be imposed on *pro se* parties (*see id*. at 16-18); and (3) whether a basis existed for the Bankruptcy Court to "block *pro se* creditor filings" (*see id*. at 18-20).

#### 1.    Appellants' Arguments Under 28 U.S.C. § 1927 Fail

Appellants' briefs are replete with nonprecedential caselaw and analysis of issues which have no relevance to the non-monetary relief imposed by the Sanctions Order. Appellants argue that the Bankruptcy Court erred in awarding sanctions under 28 U.S.C. § 1927, a statute which provides:

> Counsel's liability for excessive costs. Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Case 1:24-cv-00199-JLH    Document 13    Filed 10/30/24    Page 17 of 18 PageID #: 8084

28 U.S.C. § 1927.  Appellants argue that their conduct in this case does not meet the bad faith standard under § 1927.  (*See* D.I. 5 at 14.)  Appellants further argue that "District Courts are split on 'whether a pro se litigant can be subject to sanctions under Section § 1927 with the majority finding they cannot.'"  (D.I. 5 at 18 (quoting *Barcroft v. Gibbs*, 2017 WL 1499247, at *5 (E.D. Tex. Apr. 5, 2017)); D.I. 12 at 4.)

Neither argument is relevant here.  Monetary sanctions were neither requested in the Sanctions Motion nor granted by the Sanctions Order.  Indeed, neither the Memorandum Opinion nor the Sanctions Order even mention § 1927.  The "bad faith" issue is irrelevant because the Bankruptcy Court did not make any findings of bad faith, nor did it rely upon such a finding in support of its issuance of the Sanctions Order.  Rather, the Bankruptcy Court properly issued nonmonetary sanctions under its equitable powers (11 U.S.C. §105(a)) and the All-Writs Act (28 U.S.C. §1651(a)).  Accordingly, Appellants' arguments regarding the issuance of sanctions under § 1927 are "red herrings."  (*See* D.I. 5 at 4, 6, 11, 13, 17; D.I. 12 at 4, 9.)

## 2.    The Sanctions Order Does Not "Block" *Pro Se* Filings

Appellants concede that "[a] district court has jurisdiction to impose a pre-filing injunction to deter vexatious, abusive, and harassing litigation."  (D.I. 5 at 19 (quoting *Baum v. Blue Moon Ventures*, 513 F.3d 181, 187 (5th Cir. 2008)).  Appellants further concede that "the Court must weigh all of the relevant circumstances," and consider four factors in determining whether to impose such an injunction: (1) the party's history of litigation, in particular, their filing of vexatious, harassing, or duplicative lawsuits;  (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the court and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.  (*Id*. (quoting *Baum*, 513 F.3d at 189)).  Appellants further argue that a prefiling injunction must be "tailored to protect the courts and innocent parties, while preserving the legitimate rights of litigants."  (*Id*. (quoting *Baum*, 513 F.3d at 190)).

While the Court agrees, it is unclear from Appellants' opening brief which of the "relevant circumstances" they think the Bankruptcy Court failed to weigh or which of the four factors it failed to consider.  In their reply, Appellants argue that the Sanctions Order effectively "prohibit[s] the Creditors from filing oppositions to matters that involve their Claims against the Estate."  (D.I. 12 at 12.)  According to Appellants, they are not permitted to file electronically, and the pre-screening process imposed by the Sanctions Order "has added 10-14 days delay in the ability to answer motions, respond to letters" or "file responsive pleadings before hearings," which "denies due process" and "impedes justice."  (*Id*. at 4.)  But any motion for leave required by the Sanctions Order is not required to be filed at all—electronically or otherwise—rather it is to be submitted instantaneously by email to chambers.  (Sanctions Order at ¶ 2(a)(iv).)  Appellants cite no examples where a motion for leave has not been timely considered.  There is no basis to find that entry of the Sanctions Order was an abuse of discretion because it is prohibitory or unworkable.

## V.    CONCLUSION

For the foregoing reasons, the Bankruptcy Court did not abuse its discretion in entering the Sanctions Order.  Accordingly, it will be affirmed.  The Court will issue a separate Order consistent with this Memorandum Opinion.